**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LUCAS KIRMAN, | Civil Action No. 15-2357 (FLW)(LHG) |
| Plaintiff, | **OPINION** |
| v. |  |
| UNITED PARCEL SERVICE, INC. d/b/a UPS, JOHN DOES 1-10, and ABC ENTITIES 1-10, |  |
| Defendants. |  |

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for summary judgment under Federal Rule of Civil Procedure 56, filed by Defendant United Parcel Service, Inc. d/b/a UPS ("UPS" or "Defendant") seeking dismissal of the employment discrimination action filed by Plaintiff Lucas Kirman ("Kirman" or "Plaintiff"). For the following reasons, the Court will convert Defendant's motion to one for summary judgment with respect to Defendant's timeliness argument, and will grant the motion in part and dismiss it in part. Specifically, the Court will deny summary judgment on Count I of the Complaint because it is timely-filed, and will grant the motion to dismiss on Count II of the Complaint based on Plaintiff's failure to exhaust administrative remedies and, without prejudice, on Count III for failure to state a *prima facie* case of retaliation.

**I.      BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are drawn from the Complaint and certifications submitted by the parties and are not in dispute, except where noted. From May 2003 to October 2012, Kirman was employed by UPS. Compl. ¶¶ 6, 33. Until March 2005, Kirman worked as a pre-loader, which

1

required him to lift and lower packages that could range up to 70 pounds in weight, scan labels, and sort packages. *Id.* at ¶¶ 15, 18. However, in or around March 2005, Kirman was diagnosed with Multiple Sclerosis ("MS"), for which Kirman requested, and received, a lighter work duty as a scanner. *Id.* at ¶¶ 18-20.

On April 29, 2009, Kirman took an extended medical leave of absence and was placed on disability due to a severe relapse of his MS. *Id.* at ¶ 21. When Kirman returned to work on May 27, 2010, he alleges UPS did not allow him to work as a scanner, as it had before, but instead "forced him into a variety of positions, all requiring fast paced, physically demanding work, and heavy lifting." *Id.* at ¶¶ 22, 23. Kirman alleges he made daily requests for lighter work, which his supervisor allegedly promised him would be given, but no such position was provided. *Id.* at ¶ 24.

On October 29, 2010, Kirman went out on a second medical leave of absence due to his MS symptoms and his strenuous physical duties. *Id.* at ¶ 26. When Kirman was cleared for work again by his doctor, he alleges he was informed by a manager at UPS that if he could not do the job he was originally hired to do, as a pre-loader, Plaintiff could no longer work at UPS. *Id.* at ¶ 27. On or about March 27, 2011, Kirman met with UPS managers and requested that he be allowed to return to his position as a scanner. *Id.* at ¶ 29. Plaintiff alleges that UPS managers informed him there was no position with the official job title of scanner. *Id.* However, Plaintiff alleges that women who could not perform all of the required duties were often hired as pre-loaders, but were permitted to primarily scan packages and perform only occasional light lifting. *Id.* at ¶ 30.

On March 30, 2011, Plaintiff completed an U.S. Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire ("EEOC Intake Questionnaire"). Certification of Pauline M.K. Young, Esq., dated July 2, 2015 [hereinafter "Young Cert."] Ex. C. In response to question four, "[w]hat is the reason (basis) for you claim of employment discrimination," Plaintiff

checked only the box for "disability" and did not check "sex" or "retaliation." *Id.* In response to question seven, "[w]hat reasons were given to you for the acts you consider discriminatory?," Plaintiff responded, in relevant part, that "[d]uring my time of employment with UPS it was clear that there were people hired under the title of pre-loader who could not perform all the duties required under that job title and were only required to scan and perform some and occasional light lifting." *Id.* Similarly, in response to question eight, "[d]escribe who was the same or similar situation as you and how they were treated," Plaintiff responded, "N/A There are people that cannot possibly meet the [r]equirements of lifting but still stay employed because they [a]re [never] asked to [perform] these [d]uties [j]ust scan." *Id.*

On May 26, 2011, Kirman filed a charge of discrimination with the EEOC (the "EEOC Charge").[1] In the narrative of the EEOC Charge, Kirman stated:

> I was hired by this employer on or about May 21, 2003. My most recent position title is that of Pre-Loader.
>
> I have a disability that this employer has been made aware of. I have certain medical restrictions related to same. I was initially provided with a reasonable accommodation. However, there came a point that I was told that I could not return to work until I was fully cleared to return without restrictions. I was further informed that if I could not perform the job I was originally hired to do, then I could no longer work for this employer. However, on or about March 17, 2011, I had a meeting with certain officials of this company to determine the type of reasonable accommodation(s) that could be afforded to me. I requested that I be allowed to return to the Scanner position that I had previously held for approximately five years. To the best of my knowledge and belief, this position was available and I was able to perform the functions of same. However, I was informed that this accommodation could not be given to me because this position did not exist.
>
> Accordingly, I feel I have been discriminated against on the basis of disability, in violation of the Americans with Disabilities Act, as amended.

---

[1] The Complaint makes conflicting allegations regarding the date Plaintiff filed his EEOC charge, *compare* Compl. ¶ 4 (alleging May 26, 2011), *with id.* at ¶ 32 (alleging June 7, 2011). Plaintiff filed the charge on May 26, 2011, and the EEOC mailed the EEOC Charge to Defendant on June 7, 2011. Certification of Heather Weiner Brochin, Esq., dated May 26, 2015 [hereinafter "Brochin Cert."] Ex. A.

Brochin Cert.. Ex. A.  Kirman only marked the box for discrimination based on disability in the EEOC Charge, and did not check the box for sex discrimination or retaliation.  *Id.*

Plaintiff alleges that, a year and a half after the filing of the EEOC Charge, he was constructively terminated by UPS "on or around October 2012."  Compl. ¶¶ 6, 33.  On June 26, 2014, the EEOC issued a Final Determination on the EEOC Charge.  Young Cert. Ex. B.  The Final Determination provided, in relevant part, that:

> The evidence confirms that [Kirman] has a disability as defined by the statute, and he had medical restrictions related to his disability. . . .
>
> Further, the evidence of record indicates that other individuals were regularly allowed to just perform this aspect of the position.  Accordingly, this reasonable accommodation would not have caused an undue hardship for Respondent.

*Id.*  The Final Determination closed by inviting the parties to engage in conciliation, *id.*, which was apparently unsuccessful.  *See* Certification of Robert Steve Ensor, Esq., dated September 8, 2015 [hereinafter "Ensor Cert."] ¶¶ 2-3.

On September 3, 2014, the EEOC mailed Kirman a Notice of Right to Sue ("Notice").  Brochin Cert. Ex. B.  John Waldinger, the Area Office Director for the Newark Area Office for the EEOC, submitted a certification in this matter in which he explained that the "general practice" in the Newark Area Office was for him to review a notice after an investigator decides to issue one, and if he approves it, he would sign it and give it to his administrative assistant to stamp the "date mailed" section and, on that date, mail the notice to the recipient and any other parties "cc'd" in the notice.  Certification of John Waldinger, dated September 8, 2015 [hereinafter "Waldinger Cert."] ¶¶ 1-4.  Robert S. Ensor, Esq., an attorney who represented UPS in the conciliation proceeding before the EEOC with respect to Kirman's discrimination claim, submitted a

4

certification stating that he received a "cc'd" copy of the Notice on or before September 8, 2014.[2] Ensor Cert. ¶¶ 1-5.

Kirman alleges that he did not receive the Notice until January 10, 2015, when his former attorney received a copy of the Notice from the EEOC.[3] Compl. ¶¶ 5, 34. Kirman has submitted a certification in which he attests that he "do[es] not recall ever receiving a Notice of Right to Sue from the EEOC other than [the one that was] forwarded by my attorney, Mr. Albert J. Rescinio, in or around January 2015." Certification of Lucas Kirman, dated July 16, 2015 [hereinafter "Kirman Cert."] ¶ 2. Kirman further stated that he is "confident that [he] never received a notice of right to sue directly from the EEOC" because, due to his suffering from MS and his "acute[] awareness that this disease could have a negative effect upon [his] memory," he is "very careful to keep everything related to [his] claim with the EEOC in a single folder," and "[i]f anything had come in, [he] would have immediately put it in that folder for safe keeping[, but] [t]here is not such Notice in [his] folder." *Id.* at ¶ 3.

Deborah Kirman, Plaintiff's mother, submitted a certification in which she described the "extraordinary precautions" that Kirman takes, due to his "acute[] aware[ness] of his cognitive

---

[2] Due to an intervening weekend, Monday, September 8, 2014 was the third business day following the stamped date of mailing on Wednesday, September 3, 2014.

[3] Plaintiff's former attorney, Albert J. Rescinio, Esq., "did not represent [Kirman] on the actual EEOC submission"; instead, Mr. Rescinio "only represented Mr. Kirman with regard to assisting Mr. Kirman in reaching out to the EEOC to obtain records regarding his filing with the EEOC." Certification of Albert J. Rescinio, Esq., dated August 27, 2015 [hereinafter "August Rescinio Cert."] at ¶ 2. Mr. Rescinio contacted Mr. Waldinger and a "Mr. Dudt" at the EEOC to "obtain the documents regarding Mr. Kirman's case," August Rescinio Cert. ¶ 3, and, in response, received a copy of the Notice on January 10, 2015, which was post-marked January 7, 2015. Certification of Albert J. Rescinio, Esq., dated June 26, 2015 [hereinafter "June Rescinio Cert."] at ¶¶ 2, 4. Mr. Rescinio avers that after he reviewed the Notice, he contacted Mr. Dudt at the EEOC to request a proof of mailing, and that "Mr. Dudt indicated that there was no proof of mailing." *Id.* at ¶ 6.

5

deficits," to ensure that "potentially important information is not forgotten or misplaced." Certification of Deborah Kirman, dated August 27, 2015 [hereinafter "Deborah Kirman Cert."] ¶ 8; *see also id.* at ¶¶ 2-7 (describing Kirman's medical history and history of brain damage). Specifically, Ms. Kirman avers:

> Every piece of mail [Kirman] received was, and continues to be, put immediately into a designated folder which he keeps by his side. As soon as he received each piece of mail, he would call me to tell me he had received a piece of mail, and who[m] that mail was from. He would then place that mail in the appropriate folder and I would then review it that evening after work. If he received a phone call which might be important, he would immediately call me and relay the contents of that phone call. He would also type in reminders on his notebook, which is always kept on the coffee table in front of where he sits daily. This has been our routine since [Kirman] was discharged from the hospital in late December, 2011, and it remains our routine to this day.

*Id.* at ¶ 8. Ms. Kirman states that "[t]here has never been even a single occasion when [she] did not review each piece of mail on the same day [Kirman] received it." *Id.* at ¶ 9. Further, Ms. Kirman states that "[a]t no time, during [her] daily review of [Kirman's] mail, did [she] ever see any correspondence from anyone at the EEOC referencing or mentioning in any way, Notice of Right to Sue, prior to Mr. Rescinio's receipt of a package from the EEOC on January 10, 2015[.]" *Id.* at ¶ 11.

On April 3, 2015, within 90 days of Mr. Rescinio's receipt of the Notice, Plaintiff filed this lawsuit, asserting claims for discrimination under the American with Disabilities Act of 1990 ("ADA") (Count I); discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II); and retaliation under the ADA (Count III). On May 26, 2015, Defendant filed the instant motion to dismiss, or in the alternative seeking summary judgment, in lieu of Answer.

## II.     STANDARD OF REVIEW

Defendant moves both for dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56.

6

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged."

7

*Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-

moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322; *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. Appx. 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

Defendant's motion advances three arguments: (1) the Complaint is untimely under the 90-day rule; (2) Counts II and III of the Complaint are barred for failure to exhaust administrative remedies; and (3) Count III of the Complaint fails to state a *prima facie* case of retaliation. Under Federal Rule of Civil Procedure 12(d), if "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56." Since both parties have submitted certifications which go beyond the pleadings with respect to Defendant's timeliness argument, the Court will treat that portion of Defendant's motion as one for summary judgment.[4] Fed. R. Civ. P. 12(d); *Greer v. Smith*, 59 F. Appx. 491, 492 (3d Cir. 2003); *see also McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 648 (M.D. Pa. 2014)

---

[4] No additional notice to the parties is required because Defendant moved for summary judgment in the alternative. *See Davis v. Brown*, 556 F. Appx. 87, 89-90 (3d Cir.), *cert. denied*, __ U.S. __, 135 S. Ct. 246 (2014).

(partially converting motion to dismiss to summary judgment). As discussed in more detail below, the Court finds that (1) the Complaint is timely; (2) Count II is barred for failure to exhaust administrative remedies; and (3) Count III must be dismissed without prejudice based on Plaintiff's failure to sufficiently allege a *prima facie* case of retaliation.

> **A. Plaintiff has Submitted Sufficient Evidence to Rebut the Presumption that He Received the EEOC's Notice of Right to Sue within 3 Days of its First Mailing.**

Defendant has submitted the Notice, stamped as mailed on September 3, 2014, along with three certifications to support its argument that Plaintiff is presumed to have received the Notice within three days of its mailing, and, therefore, the Complaint filed on April 3, 2015 is not timely-filed. In response, Plaintiff has submitted four certifications in support of his position that the Notice was not received by Plaintiff or Plaintiff's former attorney until January 10, 2015 and, therefore, the Complaint is timely-filed. As discussed in more detail below, the Court finds that Plaintiff has submitted sufficient evidence to rebut the presumption that he received the Notice within three days of its mailing on September 3, 2014. Accordingly, because Defendant has not submitted any evidence of Plaintiff's actual receipt of the Notice prior to January 10, 2015, this Court finds that the Complaint is timely-filed.

To pursue a private action under Title VII or the ADA, a plaintiff must file his or her complaint within ninety days of receipt of the notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Edwards v. Bay State Milling Co.*, 519 F. Appx. 746, 748 (3d Cir. 2013). "The ninety-day period for filing a private action after receiving a right to sue letter is treated as a statute of limitations issue and is strictly construed." *Williams v. Kaztronix*, No. 13-0652, 2014 U.S. Dist. LEXIS 41147, at *11 (D.N.J. Mar. 26, 2014) (citing *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001)); *see also Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999). "The Third Circuit has strictly construed this requirement and has held that

a complaint filed 'even one day beyond the ninety day window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement.'" *Williams*, 2014 U.S. Dist. LEXIS 41147 at *11 (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999)). The burden of proof is on the defendant to establish the affirmative defense that suit was filed after the expiration of the 90-day time period. *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003).

"The statutorily-created ninety-day period starts when either the claimant or [his] attorney receives a right-to-sue letter, whichever is earlier." *Seitzinger*, 165 F.3d at 239 n.1 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92-93 (1990)). "When the actual date of receipt is known, that date controls; where the actual date of receipt is unknown, courts will presume receipt took place three days after the EEOC mailed it." *Edwards*, 519 F. Appx. at 748 (citing *Seitzinger*, 165 F.3d at 239); *see also Dicroce v. Norton*, 218 F. Appx. 171, 174 (3d Cir. 2007). The presumption is a rebuttable one, *Ebbert*, 319 F.3d at 108 n.5, but "[i]t is Plaintiff's burden to rebut the presumption." *Olan v. RR Donnelley & Sons Co.*, No. 07-3209, 2007 U.S. Dist. LEXIS 75534, at *5-6 (E.D. Pa. Oct. 10, 2007) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)); *see also Tate-Linton v. N.J. Transit Rail Operations, Inc.*, No. 14-4084, 2015 U.S. Dist. LEXIS 52603, at *3 (E.D. Pa. Apr. 21, 2015). The presumption can be rebutted by "sworn testimony or other admissible evidence" indicating the notice was received later than three days after mailing. *Sherlock*, 84 F. 3d at 526.

In this matter, Defendant has submitted ample evidence that the Notice was *mailed* to Plaintiff on September 3, 2014, triggering the presumption of receipt within three days of mailing. *See Jaramillo v. Solis*, No. 07-2031, 2010 U.S. Dist. LEXIS 33722, at *8-9 (D.N.J. Apr. 5, 2010); *see also Zamora v. GC Servs., LP*, No. 15-0048, 2015 U.S. Dist. LEXIS 102020, at *7-8 (W.D.

11

Tex. Aug. 4, 2015). Indeed, Plaintiff does not – and cannot – dispute that the EEOC mailed him the Notice on September 3, 2014. Instead, Plaintiff argues that he did not *receive* the Notice until his former attorney received it on January 10, 2015. Based on the evidence submitted by Plaintiff, the Court finds that Plaintiff has sufficiently rebutted the presumption of receipt.

To be sure, Plaintiff's own "bare" assertion that he merely "do[es] not recall" receiving the Notice prior to when his former attorney received it on January 10, 2015, Kirman Cert. ¶ 2, by itself, would be insufficient to rebut the presumption. *See Jaramillo*, 2010 U.S. Dist. LEXIS 33722 at *9; *see also Sherlock*, 84 F.3d at 526 (holding that Plaintiff's sworn assertion "that she had no recollection of when she received the letter," insufficient to rebut presumption). However, in this matter, Plaintiff offers more than his own assertion of non-receipt: the certifications of his mother and former attorney.

First, Plaintiff's mother attests that she and Plaintiff implemented a rigorous screening system to ensure that important mail was not lost or forgotten because of the "great importance" Plaintiff placed both on his EEOC matter in particular and out of general concern that other important information might be lost of misplaced due to his cognitive impairments. Deborah Kirman Cert. ¶¶ 2-11; *see Mulrooney v. Corp. Serv. Co.*, No. 12-0163, 2013 U.S. Dist. LEXIS 42876, at *23-27 (D. Del. Mar. 27, 2013) (finding plaintiff's sworn statement of non-receipt was corroborated by, among other things, his attorneys' sworn statement that his office did not receive an EEOC notice of right to sue until it was forwarded by defendant's attorney, and "that they were aware of the importance of the Notice, and that they routinely searched the office mail (such that had the Notice arrived, they would likely have seen it)."). Second, although Plaintiff did not employ an attorney to represent him before the EEOC, he did retain an attorney for the specific purpose of following-up with the EEOC regarding the Notice – precisely because Plaintiff (and

12

his mother) had *not* received the Notice.  *See* August Rescinio Cert. ¶ 2; *see also Duron v. Albertson's LLC*, 560 F.3d 288, 289-91 (5th Cir. 2009) (finding that a plaintiff's sworn affidavit of non-receipt was corroborated by "evidence that she and her attorney made several attempts to contact the EEOC to inquire as to the status of her case" after the 90-day period following the original mailing of the notice of right to sue); *Schmidlin v. Uncle Ed's Oil Shoppes, Inc.*, No. 13-10552, 2014 U.S. Dist. LEXIS 100641, at *13-15 (E.D. Mich. July 22, 2014) (same).  Based on these facts, the Court finds that Plaintiff has submitted sufficient evidence to rebut the presumption of receipt.  *See generally Matsushita*, 475 U.S. at 587 (reasonable inferences must be drawn in light most favorable to the party opposing summary judgment).

Because Plaintiff has met his burden to rebut the presumption of receipt, the burden then shifts back to Defendant to show the affirmative defense of late-filing.  *See Ebbert*, 319 F.3d at 108.  However, Defendant's motion relied exclusively on the presumption of receipt and, therefore, Defendant has submitted no evidence that Plaintiff *actually* received the Notice on September 6, 2014 – or any time prior to Plaintiff's former attorney's receipt on January 10, 2015.  Accordingly, Defendant has failed to meet its burden to prove the affirmative defense of late-filing, and this Court finds that the Complaint, filed on April 3, 2015, was timely-filed.

### B.  Plaintiff Failed to Exhaust Administrative Remedies for his Gender Discrimination Claim under Title VII.

Defendant moves to dismiss Count II of the Complaint based on Plaintiff's failure to exhaust administrative remedies because he did not complain of gender discrimination in his EEOC Charge.  A plaintiff cannot proceed in federal court with a claim of gender discrimination under Title VII without first exhausting administrative remedies by filing a timely EEOC charge.  *Nguyen v. Wal-Mart*, No. 12-1824, 2013 U.S. Dist. LEXIS 88948, at *11-12, 15 (D.N.J. June 25, 2013); *see also Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).  "[T]he

13

parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." *Mandel*, 706 F.3d at 163 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977)). "A plaintiff's claim [brought in the district court] must thus fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Id.* (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)). The defendant bears the burden of showing the affirmative defense of failure to exhaust administrative remedies. *Slingland v. Donahoe*, 542 F. Appx. 189, 191 n.3 (3d Cir. 2013).

Plaintiff argues that the EEOC was on notice of his gender discrimination because he "advised the EEOC that other employees, such as female employees, had been assigned light duty/scanner work – the same assignment that UPS told Plaintiff did not exist." Plaintiff's Opp. Br. at 9. However, nowhere in his EEOC Charge or EEOC Intake Questionnaire does Plaintiff complain of gender discrimination – not only did he fail to check off the box indicating that charge was part of his claim, but he also only asserted in the EEOC Intake Questionnaire that "people" were provided accommodations that he had requested. Young Cert. Ex. C.

In *Antol*, the Third Circuit rejected an argument identical to Plaintiff's argument in this matter and found that a similarly-deficient gender discrimination claim was barred for failure to exhaust administrative remedies. *Antol* involved a plaintiff who asserted a claim for disability discrimination under the ADA in his EEOC charge, but failed to assert a claim for gender discrimination. The plaintiff then filed suit in federal court, asserting claims for both disability and gender discrimination, arguing that the gender discrimination claim ought to have been

14

revealed by the EEOC's investigation, based on the sex of the employees who received positions over him. The Third Circuit disagreed, holding:

> The specifics of [Antol's] disability discrimination charge do not fairly encompass a claim for gender discrimination merely because investigation would reveal that Antol is a man and the two employees who received the positions are women. The investigation focused, quite properly we think, on the gravamen of Antol's complaint--disability discrimination. Neither the EEOC nor the agency were put on notice of a gender discrimination claim. The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court. Antol failed to exhaust administrative remedies for his gender discrimination claim.

*Antol*, 82 F.3d at 1296.

Here, Plaintiff similarly argues that the EEOC should have intuited that he also wished to assert a gender discrimination claim based solely on the fact that the EEOC's investigation should have discovered that the "people" he claimed were receiving accommodations he requested were female. Young Cert. Ex. C. Moreover, Plaintiff only included his assertion that other "people" were receiving accommodations in his EEOC Intake Questionnaire, and not his EEOC Charge. *See Johnson v. Chase Home Fin.*, 309 F. Supp. 2d 667, 672 (E.D. Pa. 2004) ("Courts in this Circuit have found that intake questionnaires do not serve the same function as the formal charge, are not part of the formal charge, and therefore do not satisfy the exhaustion requirement in circumstances such as this where a claim marked off in the questionnaire is omitted from the charge and where the EEOC does not investigate the omitted claim."); *see also Binder v. PPL Servs. Corp.*, No. 06-2977, 2009 U.S. Dist. LEXIS 103814, at *16-18 (E.D. Pa. Nov. 5, 2009) (same). Indeed, Plaintiff's EEOC Charge contains no facts regarding Plaintiff's complaints of gender discrimination, or even that other "people" received the accommodations that he requested. Brochin Cert. Ex. A. Like in *Antol*, the mere fact that the EEOC's investigation would possibly reveal that the "people" Plaintiff claimed were receiving the accommodations were female (and, indeed did find that "other

15

individuals were regularly allowed to just perform [the scanning] aspect of the [pre-loader] position," Young Cert. Ex. B), is insufficient to put the EEOC on notice that Plaintiff was also claiming gender discrimination. Accordingly, the Plaintiff failed to exhaust his administrative remedies for a claim of gender discrimination when he did not file a separate EEOC charge (or amend his initial EEOC charge) to put the EEOC on notice that his claim included gender discrimination.

### C. Plaintiff Has Failed to Plead a *Prima Facie* Case of Retaliation.

Finally, Defendant moves to dismiss Count III of the Complaint (retaliation under the ADA) for failure to state a claim. "In order to establish a prima facie case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (2004) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir.), *cert. denied*, 537 U.S. 824 (2002)), *cert. denied*, 544 U.S. 961 (2005). A plaintiff may show a causal connected through "(1) temporal proximity between the protected activity and the adverse employment action; (2) an intervening pattern of antagonism; or (3) other facts, that, when 'looked at as a whole,' are sufficient to raise an inference." *Newton-Haskoor v. Coface N. Am.*, No. 11-3931, 2012 U.S. Dist. LEXIS 68972, at *16 (D.N.J. May 17, 2012) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)), *aff'd*, 524 F. Appx. 808 (3d Cir. 2013).

Here, Plaintiff provides only a conclusory allegation that "Defendants retaliated against Plaintiff, *inter alia*, by harassing him and ultimately terminating his employment because of the filing of his EEOC charge." Compl. ¶ 53; *see Iqbal*, 556 U.S. at 678-79 ("While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations."). Nowhere in the Complaint does Plaintiff allege any facts to support his conclusory allegation that Defendant "harass[ed]" Plaintiff, nor any facts that show causality between Plaintiff's filing of an EEOC Charge on May 26, 2011, Compl. ¶ 4; Brochin Cert. Ex. A, and his alleged harassment or constructive discharge in October 2012, Compl. ¶¶ 6, 33, 53, which both occurred while the EEOC investigation was pending. Accordingly, Count III of the Complaint is dismissed without prejudice, and Plaintiff may amend his Complaint to sufficiently allege facts which, if true, would be sufficient to show (1) conduct that Defendant engaged in that Plaintiff alleges constituted harassment and (2) a causal connection between Plaintiff's engagement in a protected activity and the adverse employment action(s) taken by Defendant.[5] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion is granted in part and denied in part. Specifically, Count II of the Complaint is dismissed for failure to exhaust administrative remedies,

---

[5] Defendant also moves for dismissal of Count III of the Complaint (retaliation under the ADA) based on a failure to exhaust administrative remedies. However, as discussed above, Plaintiff has failed to plead sufficient facts in support of this claim, which prevents this Court from determining whether Plaintiff's retaliation claim "fall[s] 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom,'" *Mandel*, 706 F.3d at 163 (quoting *Antol*, 82 F.3d at 1295), so as to excuse the requirement of filing a separate charge with the EEOC. Accordingly, the Court will not address Defendant's exhaustion argument with respect to the retaliation claim at this time. However, if Plaintiff chooses to file an amended complaint to sufficiently allege a *prima facie* case of retaliation, he should also allege facts that show that his retaliation claim for harassment and constructive discharge was within the scope of the EEOC's investigation of his disability discrimination claim – beyond the mere fact that the harassment and discharge occurred while the EEOC investigation was pending – such that it would have been revealed in a reasonable investigation. *See Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997) (declining to adopt a *per se* rule that "any complaint of retaliation occurring during the time when prior EEOC complaints are pending necessarily falls within the scope of those complaints"); *see also* Young Cert. Ex. B (EEOC Final Determination noting that Plaintiff was "ultimately separated from employment.").

and Count III of the Complaint is dismissed without prejudice for failure to state a *prima facie* case of retaliation.

Dated: November 30, 2015
/s/ The Honorable Freda L. Wolfson
United States District Judge